UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE W. LARSON, | ) | CIV. 12-4020-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION TO DISMISS AND |
| AUTO OWNERS INSURANCE | ) | GRANTING MOTION TO STAY |
| COMPANY a Subsidiary of Parent | ) | |
| Company AUTO OWNERS | ) | |
| INSURANCE GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Auto Owners Insurance Company, moves the court to
dismiss or, in the alternative, to stay the proceedings involving defendant,
Lawrence W. Larson. Auto Owners argues that Minnesota law applies, and
therefore, Larson's causes of action for bad faith and punitive damages fail to
state a claim. Auto Owners further argues that Larson's additional breach of
contract claim should be dismissed or, alternatively, stayed pursuant to the
*Colorado River* abstention doctrine. Larson opposes the motions. For the
following reasons, Larson's bad faith and punitive damages claims are
dismissed, and Larson's breach of contract claim will be stayed pending
resolution of the Minnesota state court proceeding.

**FACTUAL BACKGROUND**

Auto Owners is an insurance company that conducts business in
twenty-six states, including Minnesota and South Dakota. Docket 11-9 at 1.

Larson is a well drilling contractor and has maintained a residence in South Dakota since 1995. Docket 10 at 2.

In 2008, Larson obtained auto insurance from Auto Owners for himself and his business, Minne-Bleha Drilling Company, because he was working and temporarily living in Minnesota at that time. Docket 10 at 2, 14; Docket 7-3 at 2. Larson purchased the insurance from Auto Owners through an agent located in St. Paul, Minnesota. Docket 1 at 1.

On May 15, 2008, while covered under the above-mentioned insurance policy, Larson was involved in an automobile accident in Hugo, Minnesota. The driver of the other automobile, Pamela Grace Bridger, was determined to be 100 percent at fault and was cited for driver inattentiveness. Docket 1 at 3. Larson suffered both temporary and permanent injuries as a result of the accident. Larson alleges that the injuries require medical services that will cost more than $120,000. Additionally, Larson alleges that he "has suffered in the past and will continue to suffer in the future, physical pain and mental suffering, loss of enjoyment of life, inconvenience, scarring, loss of income, impairment of future earning capacity, loss of home services, and partial permanent impairment[.]" *Id.*

Bridger was insured through State Farm Mutual Automobile Insurance Company. Docket 1 at 4. Pursuant to Bridger's policy and with the consent of Auto Owners, Larson accepted State Farm's tender of $100,000, which

constituted Bridger's full auto-policy liability limit. *Id.* Following acceptance of the $100,000 from State Farm, Larson filed an underinsured motorist claim on July 27, 2011, with Auto Owners pursuant to his contract of insurance, "which provides coverage for injuries, damages and entitlements to first party benefits, caused by uninsured and underinsured motorists." *Id.*; Docket 10 at 4.

Auto Owners contacted Larson on September 15, 2011, indicating that the claim was forwarded to attorney Timothy Tobin. Docket 10 at 4. Larson then filed a complaint with the Minnesota Department of Revenue (MDR) on October 19, 2011, asking the MDR to impose a penalty on Auto Owners for their delayed response to Larson's claim. The MDR imposed a penalty of $2,500 on Auto Owners. Docket 10 at 4.

Because the parties do not agree on the value of Larson's underinsured motorist claim, Larson and Auto Owners have not reached a settlement on such claim. Auto Owners filed an action seeking a declaratory judgment on the value of the claim in the Fourth Judicial District Court, Hennepin County, Minnesota.[1] On February 7, 2012, one day after being served with Auto Owners' complaint, Larson filed an action in this court. Docket 1. Larson alleges that the actions of Auto Owners regarding settlement of his claim are

---

[1] Auto Owners served Larson with a summons and complaint on February 6, 2012, in Moody County, South Dakota. Docket 7-1.

cause for a breach of contract claim, a bad faith claim, and a punitive damages claim.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review the complaint as a whole to determine whether the plaintiff has stated a claim upon which relief can be granted. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The facts alleged in the complaint must be considered true, and all inferences must be viewed in favor of the nonmoving party. *Strand v. Diversified Collection Serv., Inc.,* 380 F.3d 316, 317 (8th Cir. 2004). The Supreme Court has recently held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Braden,* 588 F.3d at 594 (quoting *Iqbal,* 556 U.S. at 678)).

## DISCUSSION

Auto Owners argues that Larson's causes of action should be dismissed because Minnesota law applies in this diversity action, and under Minnesota law, Larson's causes of action for bad faith and punitive damages fail to state a claim. Auto Owners further argues that Larson's breach of contract claim

should be dismissed or, alternatively, stayed pursuant to the *Colorado River* abstention doctrine because there is a duplicative action currently in a Minnesota state court.

## I.  Choice of Law[2]

Auto Owners argues that Minnesota law applies to Larson's causes of action. In diversity cases, federal courts apply the choice of law rules of the forum state to determine which state's substantive law applies. *Allianz Ins. Co. of Canada v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006). The court will therefore apply South Dakota's choice of law rules.

According to South Dakota law, the court considers the nature of the action to determine which state's law to apply. *Great West Cas. Co. v. Hovaldt*, 603 N.W.2d 198, 201 (S.D. 1999). Much like the situation in *Great West Cas. Co.*, this case involves an action by an insured against an insurance carrier. *Id.* "An action by an insured against an insurance carrier pursuant to an uninsured motorist provision is an action on the policy and is therefore *ex contractu.*" *Id.* (quoting *Baker v. Continental Western Ins. Co.*, 748 F. Supp. 716, 719 (D.S.D. 1990)). South Dakota law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be

---

[2] The parties agree that there is a conflict between South Dakota and Minnesota law which necessitates a choice-of-law analysis. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) ("Before applying the forum state's choice-of-law rules . . . a trial court must first determine whether a conflict exists.").

performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." SDCL 53-1-4 (1939). "Generally . . . an insurance contract is 'made' at the place where the last act necessary to its completion is accomplished." *Great West Cas. Co.*, 603 N.W.2d at 201. Here, Larson purchased the insurance policy from an agent located in Minnesota. At the time he purchased the policy, Larson was working and living in Minnesota, albeit only temporarily.[3] Because the insurance contract was "made" in Minnesota, Minnesota law applies to Larson's breach of contract claim.

Larson's claim of bad faith[4] requires additional analysis when determining whether to apply South Dakota or Minnesota law because a bad faith claim is a hybrid between a contract claim and a tort claim.[5] Under South Dakota law, "before a party can sue for breach of good faith, a contract must be proven. Contract law does not recognize a breach of good faith separate from a contract." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 843 (S.D. 1990). Following this line of reasoning, it is natural then to apply the

---

[3] Larson notes in his brief that his work in Minnesota "required Minnesota insurance coverage." Docket 10 at 2.

[4] Because Larson's claim for punitive damages arises out of his bad faith claim, the resolution of the choice-of-law issue for the bad faith claim is determinative of the same for punitive damages.

[5] The South Dakota Supreme Court has not determined which choice-of-law provisions govern bad faith claims either generally or in the insurance context.

choice-of-law provisions that govern contracts to bad faith claims, meaning

that Minnesota law would apply to Larson's bad faith claim.[6] The South

Dakota Supreme Court has also held, however, that in an insurance context,

an insurer's violation of its duty of good faith gives rise to the *tort* of bad faith.

*In re the Certification of a Question of Law from the U.S. Dist. Ct., Dist. of South*

*Dakota, Western Div., Pursuant to the Provisions of SDCL 15-24A-1, and*

*Concerning Fed. Action Civ. 85-5086, Titled as Follows: Champion v. United*

*States Fidelity & Guaranty Co.* (*Champion*), 399 N.W.2d 320 (S.D. 1987).

Because the South Dakota Supreme Court has identified bad faith claims in

an insurance-settlement context as "torts," this court will analyze South

Dakota's choice-of-law provisions relating to torts.

"South Dakota employs the most significant relationship test when

determining choice of law questions" involving tort claims. *Burhenn v. Dennis*

*Supply Co.*, 685 N.W.2d 778, 784 (S.D. 2004). To determine which state has

the most significant relationship, the court considers the following contacts:

(a) the place where the injury occurred; (b) the place where the conduct

---

[6] Indeed, this court has previously held that the choice-of-law provisions that govern contracts apply to bad faith claims because a breach of good faith requires a contract. *Carda v. E.H. Oftedal & Sons, Inc.*, No. Civ. 04-5036-KES, 2005 WL 2086280, at *5 (D.S.D. Aug. 26, 2005). But the bad faith claim in *Carda* did not stem from a failure to settle an insurance claim, which seems to receive special treatment under South Dakota law. *See Garrett*, 459 N.W.2d at 842 (recognizing that a bad faith claim in the context of insurance settlement is a "tort concept").

causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship between the parties is centered. *Id.*; *see also* Restatement (Second) of Conflict of Laws § 145 (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Burhenn*, 685 N.W.2d at 784. When there is not a statutory directive on point, as is the case here, the relevant policies to consider in light of the aforementioned contacts are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* at 784 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

Determining the place where the injury occurred is rather difficult in this case because the tort alleged is bad faith. *See Am. Guar. & Liab. Ins. Co. v. U.S. Fidelity & Guar. Co.*, 668 F.3d 991, 997 (8th Cir. 2012). A recent Eighth Circuit opinion interpreting Missouri choice of law[7] held that "the place where an insured feels the economic impact of an excess verdict is the place where

---

[7] The court in *Am. Guar. & Liab. Ins. Co.* referred to courts in Connecticut and Montana that found that an insured's failure to settle a claim harms the insured's financial interests where he resides. 668 F.3d at 997.

an injury occurs for purposes of a . . . bad faith failure-to-settle case."[8] *Am. Guar. & Liab. Ins. Co.*, 668 F.3d at 997. Larson filed his underinsured motorist claim in 2011 while he was living full time in South Dakota. Docket 10 at 3-4. Therefore, Larson felt the economic impact in South Dakota, and thus, the injury resulting from the alleged bad faith occurred in South Dakota.

The second factor under a significant relationship analysis is the place where the conduct causing the injury occurred. Courts have found that "the injurious conduct in a bad faith failure-to-settle case occurs where the settlement negotiations took place or should have taken place." *Am. Guar. & Liab. Ins. Co.*, 668 F.3d at 999 (citing *Bristol W. Ins. Co. v. Whitt*, 406 F. Supp. 2d 771, 788 (W.D. Mich. 2005)). The complaint reveals little with regard to where settlement negotiations took place. It seems that the majority of settlement discussions took place through emails and phone conversations, with Larson acting in South Dakota and Auto Owners acting in Minnesota.[9] Docket 1 at 2. Larson noted that Tobin "insisted that [Larson] travel to Minneapolis, Minnesota for a pre-litigation discovery deposition[.]" Docket 1 at

---

[8] Neither party has identified a South Dakota case that specifically addresses choice of law in a bad faith tort insurance claim, and the court could not identify such a case.

[9] Larson notes that the independent medical examination and the statement under oath that Larson was required to undergo both took place in South Dakota. Docket 1 at 2. As Larson points out in his brief, however, these events took place more than a year before settlement discussions were initiated. Docket 10 at 3.

7. Further, Larson filed a written complaint with the Minnesota Department of Revenue because Auto Owners failed to respond to settlement demands. Docket 10 at 4; *see also* Docket 1 at 6. From these facts, it is evident that Auto Owners attempted to have the negotiations take place in Minnesota and that Larson had some inclination to have the matter resolved in Minnesota.

The third factor to consider is the domicil, residence, nationality, place of incorporation, and place of business of the parties. Larson maintained a residence in South Dakota since 1995. Docket 10 at 2. Larson temporarily lived and worked in Minnesota prior to and after he purchased the insurance policy in question. Docket 10 at 2, 14. Auto Owners is based in Michigan, has an office in Minnesota, and does business in twenty-six states, including Minnesota and South Dakota. Docket 1 at 2. It appears from the complaint that Larson dealt solely with Auto Owners' Minnesota office while attempting to settle his claim. In light of these facts, the third factor favors neither party.

The fourth and final factor is the place where the relationship between the parties is centered. The relationship between the parties was created in Minnesota when Larson purchased the policy, thus entering into the contract that produced the bad faith claim, from an Auto Owners agent in Saint Paul. Docket 1 at 1. Larson purchased the policy because his work in Minnesota "required Minnesota insurance coverage." Docket 10 at 2. Moreover, the fact that Larson filed a complaint with the Minnesota Department of Revenue is

again telling because an inference can be drawn that Larson was under the impression that the relationship was centered in Minnesota. As a result, the fourth factor weighs heavily in favor of finding that Minnesota has a more significant relationship in this matter.

In light of the four factors discussed above, the court finds that Minnesota has a more significant relationship to the alleged bad faith claim. Although the injury occurred in South Dakota,[10] Minnesota is the place where the conduct causing the injury occurred and, overwhelmingly, the place where the relationship is centered.

The court now considers the policy concerns noted above in light of the contacts already established and the fact that such contacts weigh in favor of applying Minnesota law. The relevant policies of Minnesota and South Dakota are the initial factors that this court considers. Minnesota has an interest in ensuring that insurance providers offering insurance within its borders provide policies that are in accordance with Minnesota law and comply with Minnesota law when settling claims under such policies. *See, e.g.,* Minn. Stat. Ann. § 65B.49 sub.3a (West 2012) ("No plan of reparation security may be

---

[10] "Situations do arise . . . where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." Restatement (Second) of Conflicts of Law § 145 cmt. e (1971).

renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless separate uninsured and underinsured motorist coverages are provided therein."). South Dakota has an interest in protecting its residents from insurance companies that act in bad faith. The fact that Larson entered into the insurance contract while he was working and living in Minnesota, however, reduces South Dakota's interest.

The next factor this court considers is the protection of justified expectations. "[I]t would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) of Conflict of Laws § 6 cmt. g (1971). Because the insurance contract between Larson and Auto Owners was entered into in Minnesota, it stands to reason that the parties expected Minnesota law to apply to the process of settling claims. Indeed, Larson filed a complaint with the Minnesota Department of Revenue when Auto Owners failed to timely respond to Larson's underinsured motorist claim. This fact suggests that both Auto Owners and Larson expected that Minnesota law would apply to the handling of Larson's claim.

The last factor this court considers is the certainty, predictability, and uniformity of result. "Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the

legal consequences of their transactions." Restatement (Second) of Conflict of Laws § 6 cmt. i (1971). Because all of the disputes regarding the contents of the insurance contract will be handled in accordance with Minnesota law, it follows that Minnesota law should apply to any disputes regarding how the contract is performed.[11]

Under the most significant relationship test, Minnesota's law applies to the facts of this case. Minnesota has greater contacts than South Dakota. Additionally, the relevant policies and interests support the application of Minnesota law under these circumstances. Therefore, Minnesota's law applies to Larson's bad faith claim regardless of whether it is seen as a "contract" claim or a "tort" claim.[12]

## II.     Bad Faith and Punitive Damages

Auto Owners argues that Larson's causes of action for bad faith and punitive damages fail to state a claim under Minnesota law. "In 2008, the Minnesota Legislature created a private cause of action for bad faith in first-party insurance" when it enacted Minnesota Statute § 604.18. *Friedberg v.*

---

[11] This also is applicable to the policy factor that considers the ease in the determination and application of the law to be applied. The court finds that the other factors provide no extra guidance and, importantly, do not weigh in favor of applying South Dakota law.

[12] Because Minnesota law applies to Larson's bad faith claim under both a "contract" and a "tort" analysis, this court finds it unnecessary to determine which analysis a South Dakota court would apply when deciding choice of law for a bad faith claim under similar circumstances.

*Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1025 (D. Minn. 2011). "Section 604.18 permits an insured to recover certain costs when he can show that his claim was denied in bad faith[.]" *Martin v. State Farm Fire & Cas. Co.*, 826 F. Supp. 2d 1133, 1135 n.1 (D. Minn. 2011) (citing Minn. Stat. § 604.18, subd.2(a)). "A claim seeking such statutory costs may not be included in the insured's complaint; rather, '[after filing the suit, [the insured] may make a motion to amend the pleadings to claim recovery of taxable costs under [§ 604.18].' " *Id.* (quoting Minn. Stat. § 604.18). The court, not the jury, determines whether such costs should be awarded. Minn. Stat. Ann. § 604.18 (West 2008). Further, an insured cannot recover punitive damages for a violation of § 604.18. Minn. Stat. Ann. § 604.18 subd.3(b).

Here, Larson has not complied with Minnesota law because he initially pleaded his bad faith and punitive damages claims. Rather than initially pleading such claims, Larson must make a motion to amend his breach of contract claim to properly add his bad faith claim pursuant to § 604.18.[13] If Larson is allowed to amend his breach of contract claim, any award under § 604.18 will be determined by the court "in a proceeding subsequent to any

---

[13] Larson's punitive damages claim cannot stand on its own. Minn. Stat. Ann. § 604.18 subd.3(b); *see also Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996) ("[E]ven a malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action sufficient to support an award of . . . punitive damages.").

determination by a fact finder of the amount an insured is entitled to under the insurance policy[.]" Minn. Stat. Ann. § 604.18 subd.4(b).

Larson's causes of action of bad faith and punitive damages cannot stand on their own under Minnesota law. Rather, Larson must move this court to amend his breach of contract claim in order to add a bad faith claim. Therefore, Larson's claim of bad faith is dismissed without prejudice and his claim for punitive damages is dismissed with prejudice.[14]

## III.    Abstention—Breach of Contract Claim

Auto Owners argues that Larson's breach of contract claim should be dismissed, or alternatively stayed, under the *Colorado River* abstention doctrine. *Colorado River* abstention arises in "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). A federal court should abstain "only when parallel state and federal actions exist and exceptional circumstances warrant abstention." *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). Parallel state and federal actions exist when there is "a substantial similarity . . . between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state

---

[14] This holding does not limit Larson's ability to later move this court to amend his breach of contract claim.

proceeding will fully dispose of the claims presented in the federal court." *Fru-Con Constr. Corp.*, 574 F.3d at 535. Factors to consider when deciding whether exceptional circumstances exist include: (1) whether there is a *res* over which the state court has established jurisdiction; (2) whether the federal forum is inconvenient; (3) whether maintaining separate actions may result in piecemeal litigation; (4) whether the state court proceeding was either filed first or is further along in the proceedings; (5) whether state law controls; and (6) whether the state forum can adequately protect the plaintiff's rights. *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006).

Parallel state and federal actions exist in this case. The state and federal proceedings involve the same parties. Both proceedings involve a dispute over how much, if any, Auto Owners is required to pay Larson under the terms of the insurance contract that existed between the two parties. Specifically, the state action filed by Auto Owners seeks a declaratory judgment asking the Minnesota state court "to determine the amount of damages payable by Auto-Owners . . . to [Larson.]" Docket 10 at 1. The federal action filed by Larson is a breach of contract claim in which Larson alleges that Auto Owners failed to settle his insurance claim and thus owes him damages because Auto Owners breached the aforementioned insurance contract.[15] Because the state

_____

[15] As noted above, Larson's bad faith and punitive damages claims cannot stand on their own. Under Minnesota law, Larson is required to move this court to amend his original breach of contract pleadings to include a bad

proceeding presents the same issue as this federal proceeding, *i.e.*, how much, if any, Auto Owners owes Larson under the terms of the insurance contract, any decision rendered in "the state proceeding will fully dispose of the claims presented in the federal court." *Fru-Con Constr. Corp.*, 574 F.3d at 535. Thus, the court finds that the suits are parallel, and a discussion of the six factors used to determine whether exceptional circumstances warrant abstention is required.

The first two factors provide little in terms of exceptionalness. First, because the issue is how much money, if any, is owed to Larson, there is no *res* over which one court has established jurisdiction. Second, Auto Owners readily admits that the federal forum is no more inconvenient than state court. Docket 8 at 12.

The third factor is whether maintaining separate actions may result in piecemeal litigation.[16] "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke v. Burlington Northern R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989); *see also American Int'l Underwriters, (Phillipines), Inc. v.*

---

faith allegation. Because Larson has not followed the procedure laid out specifically in Minn. Stat. § 604.18, there are no bad faith or punitive damages claims currently before the court.

[16] "The Supreme Court cases make it clear that this is the predominant factor." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc.*, 48 F.3d 294, at 297 (8th Cir. 1995).

*Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988); *Bank of Oklahoma,*

*N.A., v. Tharaldson Motels II, Inc.*, 671 F. Supp. 2d 1058, 1065 (D.N.D. 2009).

Moreover, the policies underlying *Colorado River* abstention are "wise judicial

administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation." *Federated Rural Elec. Ins. Corp. v.*

*Arkansas Elec. Coop., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) (internal citation

omitted). The case before this court is nearly identical to the case currently

pending in the Minnesota state court. The parties are the same. The facts that

will be analyzed, *i.e.*, the insurance contract and the parties' performance of

said contract, are identical. The law that will be applied in both actions is the

same. The final determination of each action–the amount of damages, if any,

that Auto Owners owes Larson under the insurance contract–is practically[17]

identical. Thus, allowing this case to continue in this court would result in

piecemeal litigation. *See Manley, Inc. v. Keystone Food Products, Inc.*, 859 F.2d

80, 81-82 (8th Cir. 1988) (affirming a district court's decision to stay a

proceeding when there was a state court action that involved identical parties,

involved substantially identical subject matter and would render identical

results).

_____

[17] "Practically" is used because, technically, the final determination of the
Minnesota action will be a declaratory judgment while the final determination
in this court would be a judgment on the merits.

In further support of this court's determination that piecemeal litigation would result, in *Insurance Co. of the State of Pa. v. Syntex Corp.*, the Eighth Circuit accepted the reasoning that the "desirability of avoiding piecemeal litigation and the possibility of two interpretations of the same policy language in different courts" is a critical factor when deciding whether to apply *Colorado River* abstention. 964 F.2d 829, 834 (8th Cir. 1992) (quoting *Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir. 1986)). The concern is that "such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Id.* Even though the reasoning was being applied in the context of cases involving a federal declaratory judgment, the court sees no reason why the same rationale should not be applied here.

The fourth factor is whether the state court action was either filed first or is further along in the proceedings. The two suits were filed within days of each other.[18] The Minnesota proceeding has denied a motion to dismiss, filed by Larson, and granted a motion for an anti-suit injunction, filed by Auto Owners. Docket 18-1 at 1. Because of the current motions filed in this court,

---

[18] Larson admits in his brief that he filed this action in federal court the day after he was served with the complaint and summons for the Minnesota action. Docket 10 at 1.

there is no real difference between the two actions when considering relative progress.[19] As a result, the fourth factor is neutral in this consideration.

The fifth factor is whether state law controls. Courts have interpreted this factor to only matter when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814. As discussed above, Minnesota law controls this matter. Further, this case will likely require an analysis of recent Minnesota legislation, § 604.18.[20] Because this case will likely involve an interpretation of new Minnesota legislation,[21] this may be a "rare circumstance" in which presence of state law issues in federal court weigh in favor of abstention. *See Fru-Con Constr. Corp.*, 574 F.3d at 539. This court, however, reduces the effect this factor has on its overall determination because "the presence of state law issues [in federal court] will weigh in favor of abstention only in rare circumstances." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299.

---

[19] Neither party has argued that one proceeding is significantly further along in its respective proceedings than the other.

[20] Section 604.18 was enacted in 2008.

[21] Because § 604.18 is a relatively new piece of legislation, Minnesota has an interest in establishing a coherent policy with respect to such legislation, and this interest should be advanced by state courts. *See Colorado River*, 424 U.S. at 814 ("It is enough that exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.").

Whether the state forum can adequately protect the plaintiff's rights is the sixth and final factor. Minnesota law will be applied regardless of the forum. Both the state forum and the federal forum can adequately protect Larson's rights pursuant to Minnesota law. Thus, this factor is irrelevant in determining whether to abstain.

After carefully considering both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise, the court finds that exceptional circumstances warrant abstention. Most importantly, piecemeal litigation will result if this federal action is continued concurrently with the state action. Therefore, the court now considers whether ordering a stay or dismissing the action is appropriate.

"[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case . . . fails to resolve the matter in controversy." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). The Minnesota proceeding is the sole basis for the court's declining to proceed in this matter. As a result, this court finds that a stay is more appropriate than dismissal because it assures that this action can proceed without risk of a time bar if the Minnesota proceeding fails to resolve the matter in controversy.

## CONCLUSION

Minnesota law applies to all of Larson's claims in this action. Larson has not properly followed the procedure specifically laid out by Minnesota statute § 604.18 to assert his bad faith and punitive damages claims. Moreover, the pendency of an essentially identical action in Minnesota state court creates a situation in which piecemeal litigation will result if this action is allowed to continue. Accordingly, it is

ORDERED that Auto Owners' motion to dismiss without prejudice is granted with respect to Larson's bad faith claim and with prejudice as to Larson's punitive damages claim.

IT IS FURTHER ORDERED that Auto Owners' motion to dismiss or, in the alternative, to stay is granted to the extent that this case will be stayed pending resolution of Auto Owners' declaratory judgment action in the Minnesota state court proceeding.

IT IS FURTHER ORDERED that the parties will notify this court in writing within fourteen days of the resolution of the Minnesota state court proceeding.

Dated September12, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE