UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE W. LARSON, | CIV. 12-4020-KES |
| Plaintiff, | |
| vs. | MEMORADUM OF LAW IN  SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DISMISSING SOUTH DAKOTA BAD FAITH CLAIMS |
| AUTO OWNERS INSURANCE COMPANY a Subsidiary of Parent Company AUTO OWNERS INSURANCE GROUP, | |
| Defendant. | |

Plaintiff, Lawrence Larson moves this Court to reconsider its September 12,

2012 Order which dismissed, without prejudice, Larson's bad faith claim and

which dismissed, with prejudice, Larson's punitive damages claim. This Motion for

Reconsideration is made pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure which provides, in pertinent part, that "any order or other decision,

however designated, that adjudicates fewer than all the claims or the rights and

liabilities of fewer than all the parties ... may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

The foundation of this motion is the unanimous decision by the Minnesota Court of Appeals to Order the Dismissal of the Auto-Owners Insurance Company (Auto-Owners) Minnesota Declaratory Judgment action.  "To hold otherwise [allow the Auto-Owners Declaratory Judgment action] would circumvent public policy."  (Docket 26.1, p. 7).  "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence ... a motion for reconsideration [should not] serve as the occasion to tender new legal theories for the first time."  Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988)

## FACTS

Lawrence Larson, based on his South Dakota personal and commercial drivers' licenses, purchased a $1,000,000 automobile policy from Auto-Owners Insurance Company that became effective on April 4, 2008.  (Docket 15, ¶ 9, and Tobin Affidavit, March 27, 2012, ¶ XXIII).  Larson acquired the Auto-Owners policy in Minnesota, and remained in Minnesota approximately four months until July 2008 when he returned to South Dakota.  (Docket 15, ¶ 15).  Since July 2008 all of Larson's substantial medical care has occurred in South Dakota.  (Docket 15, ¶

21).   On July 27, 2011, three years after returning to South Dakota, Larson

delivered a claim under that policy to Auto-Owners.  (Docket 15, ¶ 35).   Despite

multiple calls, letters and emails from Larson's South Dakota attorney, Auto-

Owners did not respond to the claim.  (Docket 15, ¶ 36).

There was no other contact from Auto-Owners or its attorney so Larson

filed an Unfair Claims Practices Act administrative complaint with the Minnesota

Department of Commerce , which sanctioned Auto-Owners for failing to

communicate. (Docket 15, ¶ 38).   Minn. Stat. § 72A.201 (Subd. 4)

> The following acts by an insurer, an adjuster, . . . constitute
> unfair settlement practices:  (2) failing to reply, within ten business
> days of receipt, to all other communications about a claim from an
> insured or a claimant that reasonably indicate a response is
> requested or needed;  . . . (11) failing, within 60 business days after
> receipt of a properly executed proof of loss, to advise the insured of
> the acceptance or denial of the claim by the insurer.

Ultimately,  on September 15, 2011 Auto-Owners sent an email that the

claim had been forwarded to the Gislason Hunter firm in Minneapolis.  (Id.)

Larson's attorney then received an email that the file had been assigned to

Timothy P. Tobin for further claim handling on the UIM claim, and he should

contact Mr. Tobin.  (Id. ¶ 39).   Mr. Tobin was contacted on November 14, 2011.

(Nov 15 Tobin letter)  Less than two and a half months later, on January 26, 2012,

Attorney Tobin's office signed a Summons and Complaint to start a Minnesota

Declaratory Judgment action against its own insured, Larson.  (Docket 7.2, 7.3).

Auto-Owners  sent its Minnesota Summons and Complaint to South Dakota for

personal service of process on Larson.  (Docket 7.1).  Larson did not file an answer

to the Minnesota Declaratory Complaint, and instead filed a Motion to Dismiss

the Complaint.  (Minnesota Register of Actions).   On April 8, 2013 the Minnesota

Court of Appeals ruled that Auto-Owners' action violated public policy.  (Docket

26.1, p. 7).

The Michigan Corporation Auto-Owners maintained a regional claims office

covering Minnesota, North Dakota and South Dakota in White Bear Lake,

Minnesota that initially handled the Larson Claim.  (Docket 15,  ¶ 34).  The Auto-

Owners claims office monitored the claim and communicated to South Dakota to

Larson and his attorney and arranged medical expense (PIP) benefits payable in

South Dakota.  (Id. ¶ 22).

The Auto-Owners claims office had previously requested that Larson submit

to an Independent Medical Exam, which was done by an Auto-Owners hired

physician [who traveled to Rapid City, South Dakota] on August 18, 2009.  (Id. ¶

25).

A settlement with the third party insurance company [State Farm] for its

full policy limits of $100,000 was made, and was approved by Auto-Owners on

January 24, 2011.  (Id. ¶ 28).   The $100,000 third party insurance coverage was insufficient to cover Larson's accident related medical expenses [and all of his MVA related damages]. (Id. ¶ 7).  After the Auto-Owners consent and settlement approval,  on February 10, 2010, Larson gave a Statement Under Oath in Rapid City, South Dakota to an attorney hired by Auto-Owners.  (Id. ¶ 24).

Throughout the short negotiations with Auto-Owners,  the theme was clear; either accept Auto-Owners'  first party UIM settlement offer or Larson would have to fulfill  at least three of Auto-Owners' demands:  (I)  That Auto-Owners be provided complete pre-accident medical records;  (At that time, Larson had provided complete medical records except for several prior records from the 1980's) (Docket 15, ¶ 44);  (2) That a further [pre-litigation oral] deposition of Lawrence Larson in Minnesota was required;  and (3)  That any litigation had to be in Minnesota.  (Docket 15, ¶ 44 and Tobin Affidavit, ¶ XIII.).  "Again, any litigation against Auto-Owners must be held in Minnesota in either the county in which the insurance contract was issued or the county in which the accident occurred, both of which being in the Twin Cities metropolitan area." (Tobin Letter, December 7, 2011, p. 4).

## DISCUSSION

The Minnesota Court of Appeals has confirmed that Attorney Tobin's persistent claims that Larson had to travel hundreds of miles to a venue in the metropolitan Minneapolis area was not only wrong; it violated Minnesota public policy.  (Docket 26, p. 7).  The Minnesota Court rejected Auto-Owners' Minnesota action because "the complaint does not seek a declaration of the rights, status, or legal relations of the parties [under the insurance policy].  (Id.)   Not only did the Minnesota Appeals Court reject the Auto-Owners mantra of its rights to control the litigation in Metropolitan Minneapolis, Minnesota but it noted that "respondent [Auto-Owners] *fails to cite any authority*" to permit the Minnesota action against Larson.  (Id., emphasis supplied).

CHOICE OF LAW

The Court discussed the most significant relationship test: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship between the parties is centered."  (Docket 23, pp7-8):

> "These contacts are to be evaluated according to their relative importance with respect to the particular issue." **Burhenn**, 685 N.W.2d at 784. When there is not a statutory directive on point, as is the case here, the relevant policies to consider in light of the aforementioned contacts are: (a) the needs of the interstate and

international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. Id. at 784 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).
 (Docket 23 at 8).

**(1)** The Court ruled that "the injury resulting from the alleged bad faith"

occurred in South Dakota.  (Docket 23, p. 9).   That ruling is not disputed.

**(2)** As to the place where the conduct occurred, the Court largely dismissed

the impact of the Independent medical examination [Auto Owners flew its own

IME doctor from Minnesota to Rapid City, SD to examine Larson] and the

statement under oath conducted by Auto-Owners in South Dakota, as events that

happened prior to the time of the Auto-Owners overt bad faith.

The Court focused on Larson's complaint to the Minnesota Department of

Commerce  (which found that Auto-Owners violated the Minnesota law and also

was a purely administrative remedy, nonjudicial], but failed to consider Auto-

Owners' contacts with the Moody County, South Dakota Sheriff's office when it

sought to force Larson to come to Minneapolis, Minnesota to defend an Auto-

Owners action.  (Docket 7.1).  Larson submits to the Court that subsequent events

have illustrated the misinterpretation in the Court's conclusion relating to

Larson's "inclination" to have the matter resolved in Minnesota.  "[I]t is evident that Auto Owners attempted to have the negotiations take place in Minnesota and that Larson had some inclination to have the matter resolved in Minnesota." (Docket 23, p. 10).

It is evident that the Auto-Owners strategy was to force Larson to spend money he didn't have to litigate his claim in Minnesota.   Barely two months after the UIM settlement discussions started, Auto-Owners took the extra-ordinary step of violating Minnesota public policy and starting a declaratory judgment action in Minneapolis against Larson.   Rather than being "inclined" to resolve the matter in Minnesota, Larson filed a Motion to Dismiss objecting to the jurisdiction of the Minnesota action, as well as its inapplicability to the overt facts. (Minnesota Register of Actions)  Larson has never filed an answer or similar responsive pleading in the Minnesota litigation.  (Id.).   Larson respectfully submits that except for a very short time after the accident, which gave rise to this UIM claim,  and except for his complaint to the Minnesota Department of Commerce to force Auto-Owners to come to South Dakota to negotiate the claim, South Dakota has been the overwhelming location where the Bad faith conduct occurred.  Again, in weighing the complaint to the Minnesota Department of Commerce, it should be more than equalized by the complaint Auto-Owners

intentionally and knowingly sent to the Moody County, SD sheriff for personal

service on Larson.   All other factors in the place where the bad faith occurred,

then favor South Dakota.

   **(3)**  Domicile or residence of the parties.  Larson is a South Dakota resident

and was temporarily in Minnesota from March 2008 to mid-July 2008.   Auto-

Owners is a Michigan company with a claims office in Minnesota that serves a

multi-state area including South Dakota.   Auto-Owners is licensed to do business

in South Dakota and carries on its insurance business in every county in South

Dakota.   (Docket 15, ¶ 32, 33).   The Court has ruled that this factor is neutral.

However, Larson submits that it tips in South Dakota's  favor because he is clearly

domiciled in South Dakota, and Auto-Owners is licensed to do business in South

Dakota and actively engages in its South Dakota business.   Although the Auto-

Owners claims office happens to be located in Minnesota, it is designed to service

claims in South Dakota and regularly does so.   Larson was in Minnesota for no

more than four months long, prior to the bad faith conduct;   Auto-Owners

maintains a permanent business presence in South Dakota.   At the time of the

bad faith, both parties were domiciled in South Dakota, while Larson was not in

Minnesota.   In the end, Larson submits the scale tips at least 75% to South

Dakota, and 25% at most to Minnesota.

9

**(4)**  Where is the relationship between Auto-Owners and Larson centered? The Court has ruled that "Minnesota is the place where the conduct causing the injury occurred and, overwhelmingly, the place where the relationship is centered." (Doc. 23, p. 11).   The Court again discussed the administrative complaint Larson made with the Minnesota Department of  Commerce.  That administrative complaint was made in an attempt to avoid litigation and force some type of contact from Auto Owners.  Larson had settled with the third party insurance company [State Farm] in January 2011.  The third party auto liability claim against the tortfeasor which would have clearly been subject to Minnesota jurisdiction, was wholly completed on January 25, 2011, with the full, complete and acknowledged consent and agreement of Auto Owners.  Larson then, had documented his UIM claim for Auto-Owners.  The PIP and the UIM claims were initially handled through the Auto-Owners regional claims office which happened to be in Minnesota.

To more than counter the Minnesota Department of Commerce administrative complaint, Auto-Owners came to South Dakota and had Larson personally served with the Auto-Owners Minnesota declaratory action at his home in South Dakota.   The Minnesota Department of Commerce found that Auto-Owners violated Minnesota regulatory and administrative law when it

neglected to respond to Larson's requests for contact on the UIM claim in South Dakota.  The Minnesota Court of Appeals ruled that Auto-Owners' action which was served in South Dakota,  violated Minnesota public policy .

When contact was finally made in mid-November 2011, between Auto Owners' claim handler Tobin, and Larson's Attorney, the contact was made in South Dakota.  Phone calls were made to South Dakota, correspondence by mail was made to South Dakota and several emails were sent to South Dakota.   The first thing demanded in the first letter dated November 15, 2011, which was sent to Larson's South Dakota attorney, stated that Attorney Tobin could not locate medical records for Larson's pre-accident treatment.   Like the post-accident medical records, *all of Larson's medical care and records have originated and are available in South Dakota.*

In his first letter, the Auto-Owners attorney said:  "Obviously, if I was going to make a precise estimate as to the value of the claim, we would need additional information including your client's past medical records. We would also like to have the opportunity to take your client's deposition and we would undoubtedly want to have him seen in an independent medical evaluation."  (Tobin Letter, Nov. 15, 2011). The center of gravity of every demand made by Auto-Owners was

11

legally, in South Dakota.[1]  The first IME had already taken place in Rapid City.   If

and/or when Larson is deposed, it will be in South Dakota.

Auto-Owners  attempted to center Larson's claim in Minnesota and has

been rejected by the Minnesota Court of Appeals.  (Docket 26.1).  Again, Larson

submits that the scale tips clearly to South Dakota in this area.   The attempt to

force the litigation into Minnesota was a bad faith negotiating  strategy and was

stopped by the Minnesota Court of Appeals.

The Minnesota Court of Appeals decision  dramatically changes the center

of the relationship between Auto-Owners and Larson.   The final result is that the

four factors used to select the choice of law, now does, and should,

overwhelmingly favor South Dakota.

**The relevant policies of Minnesota and South Dakota**.   The District Court

recognized that "South Dakota has an interest in protecting its residents from

insurance companies that act in bad faith." (Doc. 23, P.12).  The interest was then

reduced because the insurance policy was purchased while Larson was working in

Minnesota.  (Id.).

---

[1] If Auto-Owners could obtain a second IME, and if Auto-Owners then relied on Minnesota law, it would have to be in South Dakota.  (See Minn. Stat. § 176.155 (2012), limiting travel distance to 150 miles without special approval.  See also SDCL § 15-6-35, which also limits the distance that the party examinee must travel to have an IME done).

Minnesota has adopted an "insurance Standard of Conduct." Minn. Stat. §

604.18 (2012).   The insurance standard of conduct and the South Dakota bad

faith cause of action have a major component in common; the Minnesota statute

was effective and the bad faith conduct occurred *after* Larson had moved back to

South Dakota.   See Minn. Stat. 604.18, Sec. 2 (2008): "Section 1 is effective

August 1, 2008 , and applies to causes of action for conduct that occurs on or after

that date."   The Minnesota courts have adopted the approach of utilizing the

better rule of law.  "[I]n the context of civil tort actions, Minnesota courts will

look to the "better rule of law" rather than lex loci, the law of the place."   (State

v. Heaney, 689 N.W.2d 168, 174 (Minn., 2004)).  "The compelling factors in this

case are the advancement of the forum's governmental interests and the

application of the better law."   Milkovich v. Saari, 295 Minn. 155, 203 N.W.2d

408, 417 (Minn., 1973).

Bad faith causes of action by policyholders against their own insured are

well recognized as existent and long standing  means for the South Dakota

citizens to have a fair civil remedy to assert against bad corporate actors who

attempt to harm South Dakota policyholders/residents by the claim practices of

the insurer, individually, and institutionally.  There is a well recognized and

achievable remedy that exists in South Dakota courts.  However, the alleged

Minnesota "bad faith" law, is a very new concept in its infancy in Minnesota, and is not fairly to be characterized as a true "bad faith" remedy for harmed citizens. The Minnesota law falls extremely short on actual rights and remedies for citizens to actually recover fair and meaningful damages against a bad faith insurance company actor in Minnesota.  A civil litigant using Minnesota civil "bad faith" law, must first convince a Minnesota court of "(1) the absence of a reasonable basis for denying the benefits . . . and (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy."  (Minn. Stat. § 604.18 (Subd. 2).

There are no published appellate decisions in Minnesota that discuss Minn. Stat. § 604.18.  The statute allows for neither a jury trial on the bad faith issues nor punitive damages.  The Minnesota law severely limits the related damages that can be collected:

> (a) In addition to prejudgment and postjudgment interest and costs and disbursements allowed under law, the court may award an insured the following taxable costs for a violation of subdivision 2:
> (1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less; and
> (2) reasonable attorney fees actually incurred to establish the insurer's violation of this section.

14

Attorney fees may be awarded only if the fees sought are
separately accounted for by the insured's attorney and are not
duplicative of the fees for the insured's attorney otherwise expended
in pursuit of proceeds for the insured under the insurance policy.
Attorney fees must not exceed $100,000.

(b) An insured may not also recover punitive or exemplary
damages or attorney fees under section 8.31 for a violation of this
section.

Minn. Stat. ¶ 604.18 Subd. 3 (2012).

The choice is between the entrenched policy of protecting South Dakota

residents in relation to the law in Minnesota that was not established and is not

well defined and was not even effective  until after Larson had already removed

himself permanently from Minnesota.

**The protection of justified expectations**.    "The factor applies primarily to

consensual transactions where the parties desire advance notice of which state

law will govern in future disputes."   Medtronic, Inc. v. Advanced Bionics Corp.,

630 N.W.2d 438, 454 (Minn. App., 2001).

Here, the employment contract— a consensual transaction—
included a choice-of-law provision for application of Minnesota law.
Advanced Bionics was not a party to that contract and therefore had
no "justified expectations." But Stultz should have reasonably
expected that Minnesota law would be applied in resolving any
dispute involving the employment contract, and it is clear that
Medtronic had a justified expectation that Minnesota law would
apply to any such dispute. This factor favors clearly the application of
Minnesota law.  (Id. 630 N.W.2d at 454).

Like any  insured, Larson's justified expectations were that he would honor the contract and pay the premiums and that Auto-Owners would honor and respect any obligations that arose from the contract.   Larson expected that both he and Auto-Owners would proceed in good faith to honor their obligations. "Good faith honors a party's 'justified expectations.'" Farm Credit Services of America v. Dougan, 704 N.W.2d 24, 29 2005 SD 94 (S.D., 2005).

Larson's UIM  claim against Auto-Owners arose out of the third party liability accident which occurred on May 15, 2008.  However, the third party tort claim was completely resolved in January 2011.  Larson's  bad faith tort claims arose because of Auto Owners' subsequent actions, and inaction in South Dakota after the State Farm claim was settled. Larson was forced to resort to the use of the Minnesota Department of Commerce  administrative process because Auto-Owners refused to honor its obligations under the contract to contact him in regard to his claim.  [South Dakota had no comparable administrative means through its own Division of Insurance to actually fine Auto Owners for its failure to respond to requests for contacts within thirty days].  The violation of the failure to reasonably contract Larson's attorney in South Dakota within 30 days of the request for contact, is evidence of bad faith, not of an intention to utilize Minnesota law.   Larson expected Auto Owners to act in good faith, not to face a

short confrontational negotiation followed by a sudden move by his insurer to force Larson to return to the Metropolitan Minneapolis, Minnesota area to defend himself in the ill-conceived Minnesota declaratory action .   (Docket 26.1, p.7).

  **Certainty, predictability, and uniformity of result.**   Auto-Owners attempted to use Larson's South Dakota residence as a hammer.  Auto-Owners had an IME and an examination under oath both done in South Dakota, and Auto Owners was aware that Larson had extensive medical needs and expenses, and Auto Owners knew that the 71 year old Larson had been unable to work since the 2008 accident and was in need of financial assistance.  (Docket 15, ¶ 15, ).  Auto-Owners utilized that knowledge to attempt to first threaten litigation in Minnesota, then actually commencing an action in Minnesota.  (Docket 7.1 – 7.3). That would force Larson to go to the extra expense of appearing in court in Metropolitan Minneapolis.  In addition to the extra expense, the Minnesota action ended up costing Larson more than a year of precious time.  (Minnesota Register of Actions).

  The Minnesota Court of Appeals decision terminated the claims that Minnesota courts had any jurisdiction over this litigation.  *Auto-Owners came to South Dakota* to initiate the action against Larson and then could cite no authority

to support that action.   (Docket 26.1, p.7).   The Minnesota action is clearly

evidence of the breach of the duty of good faith. "Conduct which merely is a

breach of contract is not a tort, but the contract may establish a relationship

demanding the exercise of proper care and acts and omissions in performance

may give rise to tort liability."   Grynberg v. Citation Oil & Gas Corp.,  573 N.W.2d

493, 500 (SD 1997).

   After he was injured and unable to work, Larson did not return to his South

Dakota home because he thought it might someday give him an advantage in

litigation.   Larson never expected his South Dakota home would be used as a

hammer to attempt to force a settlement at a reduced value.   "Tort liability

requires "a breach of a legal duty independent of contract." Id. This independent

legal duty must arise "from extraneous circumstances, not constituting elements

of the contract." Hoffman v. Louis Dreyfus Corp., 435 N.W.2d 211, 214 (S.D.1989))

   Bad faith insurance law is premised on the legal principle that there is an

implied covenant of good faith and fair dealing in every insurance contract that

prohibits either party from preventing or injuring the other party's right to receive

the benefits of the contract.   See Trouten v. Heritage Mut. Ins. Co., 632 N.W.2d

856, 862(S.D. 2001).   A claim for bad faith is an action in tort and is wholly

separate from the contractual claim for policy limits. Champion v. United States

Fidelity & Guaranty Co., 399 N.W.2d 320, 322-23 (S.D. 1987).  It is clear that Auto

Owners is well aware of South Dakota bad faith law and its inherent and practicial

application in a case involved alleged unlawful claim handling and claim practices,

giving rise to tort liability and potential punitive damages, and the potential

punitive damages presented to a jury.  See, Kirschenman v. Auto-Owners Ins., 208

F.R.D. 474 (D.S. D. 2012) and Kirschenman vs. Auto-Owners Ins., 2012 WL

1493833, D.S.D., April 27, 2012.

CONCLUSION

The Minnesota Court of Appeal's rejection of Auto-Owners' Minnesota

declaratory action impacts this Court's previous choice of law analysis.  Larson

respectfully seeks the reconsideration of this Court's previous dismissals of his

bad faith and punitive damage claims, and requests that this Court apply South

Dakota substantive law to Larson's breach of contract, UIM, bad faith claims

practices, and punitive damages claims.

Respectfully submitted this 22nd day of May, 2013.


ABOUREZK & ZEPHIER


 /s/Robin L. Zephier
Robin L. Zephier

19

Attorney for Plaintiff Lawrence
Larson
P.O. Box 9460
Rapid City, SD 57709
605-342-0097

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of May, 2013, I caused to be served, by

electronic filing a true and correct copy of the Memorandum of Law in Support of

Motion for Reconsideration of Order Dismissing South Dakota Bad Faith Claim to:

Jack Heib
One Court Street
Post Office Box 1030
Aberdeen, SD 57402-1030

By:  /s/ Robin L. Zephier
        Robin L. Zephier